**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

**PUBLIC VERSION**

| | |
|---|---|
| OPEN TEXT CORP.,<br>  *Plaintiff*<br><br>-v-<br><br>ALFRESCO SOFTWARE, LTD.,<br>BLUE FISH DEVELOPMENT GROUP,<br>LTD., and SEILEVEL PARTNERS, LP,<br>  *Defendants* | 6:20-CV-0920-ADA |
| OPEN TEXT CORP. AND<br>OPEN TEXT S.A. ULC,<br>  *Plaintiffs*<br><br>-v-<br><br>ALFRESCO SOFTWARE, LTD.,<br>BLUE FISH DEVELOPMENT GROUP,<br>LTD., and SEILEVEL PARTNERS, LP,<br><br>  *Defendants* | 6:20-CV-00928-ADA |
| OPEN TEXT CORP. AND<br>CARBONITE, INC.,<br>  *Plaintiffs*<br><br>-v-<br><br>ALFRESCO SOFTWARE, LTD.,<br>BLUE FISH DEVELOPMENT GROUP,<br>LTD., and SEILEVEL PARTNERS, LP,<br><br>  *Defendants* | 6:20-CV-00941-ADA |

## AMENDED ORDER GRANTING DEFENDANT ALFRESCO SOFTWARE'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Before the Court is Defendant Alfresco Software Ltd.'s ("Alfresco") Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Central District of California. ECF No. 97. Plaintiff OpenText Corp. ("OpenText") filed its Response (ECF No. 100), and Alfresco filed its Reply (ECF No. 104). The Court previously denied Alfresco's Motion (the "Order"). ECF No. 121. However, shortly after entry of that Order, the Federal Circuit provided new and additional

1

guidance regarding certain factors relevant to Alfresco's Motion. Therefore, this Court promptly reviewed the law and analysis in its prior Order to amend any clear errors. After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Alfresco's Motion to Transfer.[1]

## I. FACTUAL BACKGROUND

Plaintiff OpenText filed these three lawsuits accusing Defendants Alfresco Software, Ltd., Alfresco Software, Inc., Alfresco Software America, Inc., and Blue Fish Development Group, Ltd. of infringing U.S. Patent Nos. 7,627,726 ("the '726 patent"); 7,818,300 ("the '300 patent"); 8,712,980 ("the '980 patent"); 8,370,388 ("the '388 patent"); No. 7,062,515 ("the '515 patent"), No. 8,117,152 ("the '152 patent"), No. 7,590,665 ("the '665 patent"), No. 8,645,318 ("the '318 patent"), No. 10,496,609 ("the '609 patent") (collectively "the patents in suit"). While the parties conducted venue discovery in this case, OpenText dismissed two U.S. Alfresco subsidiaries— Alfresco Software, Inc. and Alfresco Software America, Inc. ("Alfresco US")—from the lawsuit in an amended complaint. Meanwhile, OpenText filed two related lawsuits against Alfresco entities' parent company Hyland Software, Inc. ("Hyland") in the Central District of California.[2] The California cases together involve six of the nine patents asserted in Waco and have already progressed to fact discovery, with Special Master Judge Andrew Guilford already handing down several rulings. A few months prior to filing this Motion, the Defendants previously filed a Motion to Transfer to Massachusetts, which it subsequently withdrew. ECF No. 97 at 1. OpenText later

---

[1] This Amended Order **VACATES** and **SUPERSEDES** the Court's prior order, dated September 30, 2021. ECF No. 121.

[2] *Open Text Corp. v. Hyland Software, Inc.*, No. 8:20-cv-2116 (C.D. Ca. filed Nov. 2, 2020); *Open Text Corp. v. Hyland Software, Inc.*, No. 8-20-cv-2123 (C.D. Ca. filed Nov. 3, 2020).

filed its Second Amended Complaint, adding Seilevel Partners, LP ("Seilevel") as a defendant. ECF No. 123.

Alfresco Ltd. ("Alfresco") is a United Kingdom-based company with headquarters in Maidenhead, UK. ECF No. 100 at 2–3. Its parent company Hyland has California offices in Irvine and Pleasanton. *Id.* Hyland acquired Alfresco US in October 2020 after these three suits were filed. ECF No. 100 at 3. Alfresco UK never merged into Hyland and remains a separate legal entity. *Id.* at 6. Neither Alfresco nor Hyland have offices in the Western District of Texas, but Alfresco UK offers and sells products and services in this district. *See id.*

Defendant Blue Fish Development Group, Ltd. ("Blue Fish") was a sales partner of Alfresco UK, and it had a regular place of business in this district. ECF No. 100 at 6. OpenText asserts that Alfresco used Blue Fish to target OpenText's Documentum product line in Texas. *Id.* ████████████████████████████████████████████████████ *Id.* Seilevel is a Texas corporation with offices and employees in Austin. *Id.*

OpenText maintains offices both in California and the Western District of Texas. *See id.*; *see also* ECF No. 1 at 3. OpenText has offices in Pasadena, and Co-Plaintiff Carbonite has offices in San Diego. ECF No. 97 at 6. OpenText also maintains three offices in Texas, with two in this district. ECF No. 100 at 5.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* "Section 1404(a) is intended to

place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. Although the plaintiff's choice of forum is not a

4

separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *In re Vistaprint Ltd.,* 628 F.3d at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III. DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the Central District of California ("CDCA"). Neither party contests that venue is proper in the CDCA and that this case could have been brought there. This Court finds that venue would have been proper in the CDCA had it been originally filed there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the CDCA is clearly more convenient than the Western District of Texas ("WDTX").

### A. The Private Interest Factors

#### i. The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs

in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d at 1345).

Alfresco states that there are no sources of proof in the WDTX. ECF No. 97 at 12.  Yet Alfresco does not specifically identify any documents located in the CDCA. It is true that the U.S. Alfresco entities merged into parent company Hyland, which has offices in California. But Alfresco UK, a foreign corporation that did not merge with Hyland, has its principal place of business outside of California. ECF No. 1 at 4; ECF No. 100 at 6–7. Still, in its Reply, Alfresco notes that its product line was integrated into its parent company Hyland, which means that documents relating to the accused product will reside in California. Alfresco also points out that OpenText's headquarters in San Mateo likely means that some documents reside in California. ECF No. 97 at 12. Carbonite's offices in San Diego would also mean that some documents would reside in California.

███████████████████████████████████████████████████████████████

███████████████████████████████████ ECF No. 100 at 8. ███████████████████

███████████████████████████████████ *Id.* Although the "bulk of relevant evidence usually comes from the accused infringer," at least some documents from OpenText will be in the WDTX. *In re Genentech*, 566 F.3d at 1345. Further, OpenText notes that Defendant Blue Fish and its successor Seilevel are Texas entities with offices in Austin. *Id.* at 9. Because they are accused infringers, this Court will presume that much proof resides in their offices in the WDTX.

While OpenText has shown that some potentially relevant documents are in the WDTX, Alfresco failed to identify any relevant documents that are in the CDCA. Nevertheless, because the Alfresco product line was integrated into Alfresco's parent company Hyland, who now sells the accused product, there will be at least some sources of proof in California. That comports with

*Genentech*'s instruction that the bulk of relevant evidence will come from the accused infringer. But this Court is not persuaded that the CDCA will have easier access to sources of proof than the WDTX. With at least some documents residing with Texas-based Defendants Blue Fish and Seilevel, some sources of proof reside in the WDTX. For those reasons, the Court finds this factor to be neutral.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

In the Court's previous order, the analysis focused on the parties' failure to demonstrate that a witness was unwilling to testify at trial. This Court no longer approaches review of this factor that way. *See In re Juniper Networks, Inc.*, 14 F.4th at 1321 (stating "[t]hat no party expressly identified any witness as unwilling to testify, however, does not cut in favor of conducting this litigation in the Western District of Texas rather than in the Northern District of California"). The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory

process factor." *In re Dish Network L.L.C.,* No. 2021-182, 2021 WL 4911981, at \*3; *see also In re Hulu*, 2021 U.S. App. LEXIS 22723, at \*10 ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). *But see In re Apple*, 581 F. App'x 886, 891 (Fed. Cir. 2014) (Bryson, J., dissenting) (collecting cases where courts required the movant to show witnesses would be unwilling to travel to the transferor district). Thus, a party does not have to prove that a witness is unwilling to testify, and when a party has failed to show that a witness is willing to testify, that witness will be presumed to be unwilling.

In its Motion, Alfresco argues that because OpenText's offices are in Pasadena, several witnesses and former employees "likely reside in greater Los Angeles" and are thus under the CDCA's subpoena power. ECF. 97 at 13. Its brief on this factor also identifies two prior art witnesses, Lauren Mayes and Boen T. Thio, who live within the CDCA's subpoena power. *Id.* at 12. OpenText rebuts by arguing that Alfresco has failed to meet its burden. It states that merely identifying witnesses outside the Court's subpoena power is insufficient to show this factor weighs against transfer. ECF No. 100 at 11.

Both OpenText and Alfresco made arguments that are now obsolete given the intervening guidance from the Federal Circuit. Contrary to OpenText's argument, Alfresco is not required to identify witnesses as unwilling to testify. As explained above, when a non-party witness has not been identified as willing, the Court will presume that the witness is unwilling. *See In re Juniper Networks, Inc.*, 14 F.4th at 1321. And contrary to Alfresco's argument, the Court should not address party witnesses under the compulsory witness factor. *Id.* at 1316 ("the private factors are . . . (2) the availability of compulsory process to secure the attendance of *non-party witnesses*

8

whose attendance may need to be compelled by court order…") (emphasis added). The Court therefore will only consider non-party witnesses in analyzing this factor, with party witnesses analyzed under the "convenience of willing witness" factor below.

In its Motion under the "convenience of willing witness factor", Alfresco argues that the CDCA is more convenient for numerous prior art witnesses. Because these witnesses are non-party witnesses, and there is no indication that they are willing to testify, this Court will treat them as unwilling witnesses under this "compulsory process" factor. Alfresco lists 21 prior art witnesses who live in California, which means they could all fall within the CDCA's subpoena power. ECF No. 97-1.

This Court is wary of the tactics Alfresco employs here. It concocts 37 prior art witnesses, many of whom are inventors of the same patent, that all live in California or Washington. Although it may be true that the only prior art witnesses in this case live on the West Coast, such an approach is prone to exploitation. A party who seeks to manipulate venue could simply throw the kitchen sink of potential prior art witnesses, and a district court would be handcuffed in scrutinizing whether they would actually be called at trial. These tactics should be discouraged, especially when the party has failed to show how the prior art is relevant. Alfresco's briefs are devoid of any explanation as to why the art or the testimony would be at all relevant to this case. It is true that this Court cannot completely disregard prior art witnesses simply because they are prior art witnesses. *In re Juniper Networks, Inc.*, 14 F.4th at 1319. But this Court will not weigh those prior art witnesses in favor of transfer when the party has completely failed to show their relevance to the present suit.

Both parties also reference former employees—who would be non-party witnesses—that would be subject to each district's subpoena power. But it is unclear just how many former

employees there are or where they reside. In its Response, OpenText states that the parties ███████ ████████████████████████████████████████████████ ECF No. 100 at 10. OpenText then states "Alfresco's U.S. entities employed or employ the following [nine] individuals in the district", but it does not identify which individuals are current or former employees. *Id.* Similarly, Alfresco simply states that given OpenText's Pasadena offices, "several of Plaintiff's witnesses and former employees likely reside in greater Los Angeles." ECF No. 97 at 12–13. The Court cannot fairly accord any weight to unknown former OpenText employees that Alfresco argues *might* live in the CDCA. The Court will not guess where potential witnesses live. *See generally Tegrity Contractors, Inc. v. Spectra Group, Inc.*, No. 12-2555, 2013 WL 654924, *4 (E.D. La. 2013) ("[T]he moving party must specifically identify the key witnesses and outline the substance of their testimony."); *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009) (same); *Chretien v. Home Depot U.S.A., Inc.*, 169 F. Supp. 2d 670, 673 (S.D. Tex. 2001) ("Without a realistic and comprehensive summary of the testimony, it is impossible for the Court to determine if a witness' appearance is cumulative or unnecessary for trial. Although Defendants in the instant case have proffered vague sentence-long descriptions of each witness' expected testimony, such nominal justifications are wholly inadequate under this standard of evaluation."); *Z-Tel Commc'ns., Inc. v. SBC Commc'ns., Inc.*, 331 F. Supp. 2d 567, 574 (E.D. Tex. 2004) ("The bottom line is that a flat assertion that these witnesses might potentially offer information germane to the facts at issue does not help the Court determine if attendance at trial will be likely such that the inconvenience associated with their travel to Texarkana weighs heavily in the analysis."). This Court will not ignore those former employees who might require a subpoena to testify, but it cannot accurately say which district has more.

The last group of non-party witnesses under this factor are the inventors of the patents-in-suit. One inventor—Scott Wells—lives in the WDTX in Austin. ECF No. 100 at App. A. Four inventors—Venkat Chandrasekaran, Razmik Abnous, Roger Kilday, and Aamir Farroq—live in California. *Id.*

To summarize, this Court will not consider the litany of prior art witnesses without any indication their testimony is relevant, and it cannot fairly accord much weight to former employees without knowing where they reside. The remaining relevant non-party witnesses are the inventors. Compulsory process could secure the attendance of three more witnesses in the CDCA than in the WDTX. For that reason, the Court finds this factor weighs in favor of transfer.

### iii. The Cost of Attendance and Convenience for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. "When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases were witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). When considering this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 U.S. Dist. LEXIS 152438, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

Alfresco argues that party witnesses from Alfresco, Carbonite, and OpenText are based in California. Specifically, it states that Carbonite witnesses are based in its San Diego office and

OpenText witnesses are based in its San Mateo headquarters, Pleasanton office, and Pasadena office. ECF No. 97 at 10. In total, Alfresco states that the Plaintiffs employ about ████████ ████ *Id.* at 6. ██████████████████████████████████████████████████ ████████████████████████████████████████████████ *Id.* ████ ████████████████████████████████████████████ *Id.* Alfresco further contends that California is more convenient for British witnesses because Alfresco's parent company Hyland has offices in Irvine, where witnesses will be able to work during trial. *Id.* For non-party witnesses, Alfresco identifies five named inventors and 37 prior art witnesses who live in California or Washington. *Id.* As explained above, the prior art witnesses and the inventors were considered under the "compulsory process" factor. *See supra* Part III(A)(ii).

OpenText argues that the cost of attendance for party witnesses should be given little weight. ECF No. 100 at 12. The Federal Circuit has since rejected this argument. *See In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 202); *In re Juniper Networks, Inc.*, 14 F.4th at 1319. As for non-party witnesses, OpenText states that most of the inventors; former employees of Alfresco UK, OpenText, and Blue Fish; the Seilevel witnesses; and the developers of the accused products do not reside or work in California. ECF No. 100 at 12. OpenText also identifies witnesses who live in the WDTX. At least one inventor, nine Alfresco US current or former employees, and some unspecified number of Blue Fish and Seilevel employees all live in this district and have material knowledge of the accused products. *Id.* at 10. The 30(b)(6) witnesses for OpenText, Blue Fish, and Seilevel all reside in Texas. *Id.*

Although Alfresco has identified witnesses who live in the CDCA, OpenText has identified witnesses who live in the WDTX. Among those residing in the CDCA, Alfresco argues that hundreds of Plaintiffs' employees reside there. But it has only identified two specifically as having

potentially relevant testimony. Alfresco has stated that Alfresco employees reside in the CDCA, but it is unclear how many or if their testimony is relevant. Among those residing in the WDTX, this Court counts nine Alfresco employees, two 30(b)(6) witnesses, and an unspecified number of OpenText employees (█████████████████████████████████████████ █████████████████████████████). Of course, both parties have also identified many witnesses who live near each of the districts.

The parties have also identified witnesses residing in the United Kingdom, Canada, Massachusetts, and Washington. Flights from the UK to either Dallas or Austin are roughly 90 minutes shorter than to southern California, but the driving time from Dallas or Austin to Waco (90 minutes) negates that. Flights from Waterloo, Canada to either Dallas or Austin are roughly one hour and 45 minutes shorter than to southern California, but the driving time from Dallas or Austin to Waco negates that. Thus, convenience for international witnesses is likely equal. For witnesses in Washington, the CDCA would be more convenient; for witnesses in Massachusetts, the WDTX would be more convenient. For all witnesses both international and domestic, lodging and food in Waco would likely be cheaper than in the CDCA.

For some witnesses, the cost of attendance is lower the WDTX, and for other witnesses the cost of attendance is lower in the CDCA. There is no indication that one district would be more convenient than the other. Therefore, the Court finds this factor is neutral.

### iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb*

*Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

Alfresco argues that judicial economy favors transfer to the CDCA because OpenText asserted six of the same patents against Hyland and Alfresco in the CDCA based on the same technology and against similar accused products. ECF No. 97 at 9. And because Hyland acquired the Alfresco US entities, discovery in one court would be most efficient. *Id.* Hyland, however, is a Ohio corporation and cannot be sued here. *Id.* Alfresco argues transferring is the only way to avoid multiple lawsuits on the same issue. *Id.*

OpenText rebuts with three arguments. First, there are three additional patents involved in these cases that are unrelated to the claims and patents in the California cases. ECF No. 100 at 13. Second, there are different asserted claims against different products. *Id.* Third, there are different defendants, both of whom are Texas-only defendants. *Id.* Those together, OpenText argues, weigh against transfer. *Id.*

There is a significant degree of overlap between these WDTX cases and the CDCA cases, as six of the same patents are at issue in both districts. As OpenText articulates, this case involves different patents, different claims, different products, and different parties. But this Court cannot ignore that trying these cases in the same court, involving six of the same patents and many of the same accused products, will yield more efficient litigation. And even if there are three additional patents with different defendants, there remains the danger of inconsistent rulings between this

14

Court and Special Master Guilford on the six shared patents. For those reasons, the Court finds this factor weighs in favor of transfer.

## B. The Public Interest Factors

### i. Administrative Difficulties Flowing from Court Congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). This factor considers the "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Alfresco argues that the CDCA docket is twenty percent less crowded than the WDTX when looking at per-judge caseloads. ECF No. 97 at 15. The trial date in the California cases is set for September 22, 2022, three months before the trial date in this case. *Id.* Alfresco argues that the transfer and consolidation of this case with the other California cases would promote maximum efficiency. *Id.* OpenText responds by noting this Court's efficiency in taking patent cases to trial. ECF No. 100 at 14. It argues that the cases in this district are slightly ahead of the cases in California despite the earlier trial date there. *Id.* OpenText claims these weigh slightly against transfer.

Although Alfresco is correct that this district has more cases, it ignores this Court's ability to get those cases to trial quickly. Despite the large number of cases pending before this Court, the Court has been able to bring patent cases to trial in approximately two years after the filing of the

complaint. *See, e.g., MV3 Partners v. Roku,* 6-18-CV-00308 (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC*, 2020 WL 6439178 (20.3 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No. 6-21-CV-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-CV-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-CV-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus v. Google*, 6-20-CV-00101 (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6-20-cv-00018 (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare v. Google LLC*, 6-19-CV-663 (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial). Thus, the assertion that the caseload is higher here does not support Alfresco's argument that time to trial would be quicker in the CDCA.

The speed in getting to trial specifically is determinative under this factor. Notably, however, the trial backlog in CDCA caused by courthouse closures due to the COVID-19 pandemic beginning in March 2020 could make the time to trial in the CDCA longer than anticipated. By contrast, this Court conducted its first patent jury trial during the COVID-19 pandemic in October 2020, and has since conducted at least seven jury trials. In 2021 alone, this Court has already conducted six patent jury trials in the Waco courthouse. Nevertheless, this Court cannot ignore that the trial date in the California cases is set for three months before the trial date in this case.

Considering the foregoing arguments, the court finds this factor to weigh in favor of transfer because the time to trial is earlier in the California cases.

### ii. Local Interest in Having Localized Interests Decided at Home

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

Alfresco argues that California has a stronger localized interest. It points to the fact that OpenText maintains offices in California, ███████████████████████████████, and Alfresco's corporate parent Hyland has an office in the CDCA. ECF No. 97 at 14. Alfresco states that any local interest in Austin is not as significant as that of the CDCA. *Id.*

OpenText responds by arguing that California has no interest because the Alfresco products at issue were designed and developed and are sold and serviced in the United Kingdom. ECF No. 100 at 15. The other defendants, Blue Fish and Seilevel, sell their infringing products in the WDTX and target OpenText in this district. *Id.* OpenText also rejects any inclusion of Hyland in this factor because it acquired Alfresco after the filing of this case, and Alfresco UK (which is the only remaining entity) was never merged into Hyland. *Id.* at 15. OpenText also employs people in Texas and competes against the defendants in the WDTX. *Id.* Finally, some of the asserted patents in one of the three cases before this court were invented in the WDTX, and the products were developed in the WDTX. *Id.*

To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320. The most relevant considerations are therefore where the design, development, and sale of the accused products occurred. Alfresco asserts that Documentum, the product embodying the asserted patents, was developed in California. But the plaintiff's product embodying the patent is irrelevant here. Rather, the design, development, and sale of the *accused* product are controlling. As OpenText asserts, the accused product was designed in the UK, not California. These are sold and serviced from the UK, and then sold globally. Alfresco has failed to show how any events forming the basis for infringement occurred in the CDCA. Defendants Blue Fish and Seilevel, however, sell (or sold) their accused products in this district. Sale of products qualifies as an event forming the basis for infringement in this district.

None of the events giving rise to the infringement claim occurred in the CDCA, and the Defendants' generalized presence in that district is insufficient. Because the accused products from at least one Defendant were sold in the WDTX, the Court finds this factor weighs against transfer.

### *iii. Familiarity of the Forum with the Law That will Govern the Case*

Both parties agree that this factor is neutral.

### *iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties agree that this factor is neutral.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Neutral |
| Availability of compulsory process to secure the attendance of witnesses | Weighs in favor of transfer |
| Cost of attendance for willing witnesses | Neutral |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs in favor of transfer |
| Administrative difficulties flowing from court congestion | Weighs in favor of transfer |
| Local interest | Weighs against transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Four of the eight factors are neutral. One factor disfavors transfer. Three factors favor transfer. The fact that overlapping cases in the CDCA involving most of the same patents and

accused products could lead to inconsistent rulings, and the fact that the CDCA cases are outpacing this Court shows that judicial economy would be best served by transferring these cases to the CDCA. And because intervening guidance from the Federal Circuit pushes the compulsory process factor in favor of transfer, Alfresco has met its burden in showing that the CDCA would be clearly more convenient.

**IT IS ORDERED** that Alfresco's Motion to Transfer Venue to the Central District of California is **GRANTED**.

SIGNED this 19th day of November, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on November 22, 2021 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ *Jonathan M. Watkins*
Jonathan M. Watkins